IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GORDON E. SUSSMAN,

                       Petitioner,

     v.

JODINE DEPPISCH, Warden,
Fox Lake Correctional Center,

                  Respondent.

REPORT AND
RECOMMENDATION

09-cv-35-bbc

---

## REPORT

Before the court for report and recommendation is the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by Gordon E. Sussman, who currently is serving a 13 year term of imprisonment as a result of his June 2005 conviction in the Circuit Court for Dane County on two counts of repeated sexual assault of the same child and sixteen counts of possession of child pornography. Sussman contends that his trial counsel was ineffective because he failed to provide evidence of the victim's prior false accusation of sexual assault and because he failed to introduce evidence that the victim had denied to his counselor that Sussman had sexually assaulted him. Sussman also contends that admission at trial of lay opinion hearsay evidence violated due process and his right to confront his accusers.

As discussed below, Sussman's constitutional claims regarding the opinion evidence fail because he failed to fairly present them to the state courts and even if he had, they have no merit. Sussman's claims against his attorney must fail because Sussman has not shown that the state courts' resolution of these claims failed to comport with the requirements of § 2254(d). Therefore, Sussman is not entitled to habeas relief from this court.

I have drawn the following facts from the state court record:

FACTS

**I.  Trial**

In June 2005, petitioner Gordon Sussman was tried in Dane County Circuit Court on charges of repeated sexual assault of the same child, exhibiting harmful material to a child and possession of child pornography.  Sussman was accused of sexually abusing Scott B., a boy under the age of 13, from May 1998 through January 2002 and between April and May 2002, and of possessing child pornography on both his home and work computers.  Sussman was represented at trial by Attorneys Stephen Hurley and Erik Guenther.  Assistant District Attorney Jac Heitz prosecuted the case.

The victim was called as a witness at trial and testified to numerous incidents where Sussman had sexual contact with him.  He also testified that Sussman showed him pornographic pictures on the computer.  Tr. Transcript, dkt. 7, Exh. I, Part 3 (Tab 236), at 218-76.  The witness testified that until May 2002, he did not tell anyone about his sexual contact with Sussman because he was embarrassed and because he "thought it was right."  The following exchange took place between the prosecutor and the witness:

> Q.  And do you recall what happened to cause you to say hey, this happened?
>
> A.  My mom had had a lot of people tell her, friends, therapist that I was showing signs of being - -
>
> MR. HURLEY: I object to the hearsay.  I ask it be stricken.
>
> THE COURT: Sustained, stricken.
>
> MR. HEITZ: I'm explaining, I'm asking the question as to why he disclosed, Your Honor.  I think he is entitled to say why he disclosed.

2

> THE COURT: Then it's not offered for the truth.
>
> MR. HEITZ:   That's correct.
>
> THE COURT: You may answer it.
>
> MR.  HEITZ CONTINUING:
>
> Q. Continue.
>
> A.   My mom had heard from friends and therapist that I was showing signs of being sexually abused and that she needs to really ask me heart to heart.  And we were in Culvers and her friend and her asked me and sat me down and I had told her.

*Id.* at  278-79.

On cross-examination, the witness acknowledged that Sussman was not the first person whom he had accused of sexual assault.  *Id.* at 352-53.  He testified that he had told psychiatric hospital staff that once when he was a young boy, his father had touched him while the two were taking a shower together, and in his view, the touching was inappropriate.  *Id.* at 355.  Hurley asked if he had repeated the accusation over a year later to his therapist, Bryce Mitchell.  The witness responded that he guessed so.  When Hurley began to ask a question about the content of the witness's discussion with Mitchell, Heitz objected.  Outside the presence of the jury, the court held that Hurley could not ask the witness about prior untruthful allegations of sexual assault because he had not brought a pretrial motion as required by Wisconsin's rape shield law, Wis. Stat. § 972.11(2).  *Id.* at 364-65.  When the jury returned to the courtroom, the court sustained the objection and struck from the record reference to a false claim of sexual assault being repeated to Bryce Mitchell.  *Id.* at 373-74.

Hurley then asked the witness about his therapy with Mitchell.  The witness responded

that he saw Mitchell 65 times over a span of two and one-half years.  This exchange followed:

> Q.  So during all this period of time, this span of time that you say
> Mr. Sussman was assaulting you and showing you pornography,
> you were meeting with her on a regular basis; is that correct?
>
> A.  Yes.
>
> Q.  And you met with her often and came to trust her; is that
> correct?
>
> A.  Yes.
>
> * * *
>
> Q.  Have you discussed Gordon Sussman with her often; is that
> correct.
>
> A.  Yes.
>
> Q.  And you were asked directly whether Gordon Sussman ever did
> anything sexual with you; is that correct?
>
> A.  I don't recall.
>
> Q.  Do you recall unequivocally stating to Bryce Mitchell that he
> did not?
>
> A.  I don't.
>
> Q.  And if you said such a thing, would you have been lying to
> Bryce Mitchell?. . .
>
> A.  Yes.

*Id*. at 378-79.  On cross-examination, the witness also admitted that during an interview

with a detective, he had falsely accused Sussman of molesting three other boys that he was

mentoring.  *Id*. at 436.  Later in the trial, the detective confirmed that the victim had made such

an accusation.  Dkt. 7, Part 7 (Tab 241), at 1453.  Another detective testified that, when he

4

interviewed Sussman after his arrest, Sussman said he had been warned by Scott's father about false allegations of sexual assault that Scott had made in the past. Dkt. 7, Part 6 (Tab 240), at 1195-96.

Dr. Anna Salter, an expert on child sex offenders and victims of child sexual abuse, testified for the state. Dkt. 7, Part 3 (Tab 236). According to Salter, even when confronted directly, child victims of sexual abuse often do not disclose any or all of the abuse right away, *id.,* at 131-134 and when they do, they are more likely to tell a mother or friend than a counselor. *Id*. at 167-68.

Before the victim's mother testified, Hurley announced that he intended to ask her about the victim's false accusation that his father had sexually assaulted him. Dkt. 7, Part 5 (Tab 239), at 970. Hurley argued that he should be allowed to ask the victim's mother if the victim ever previously had alleged sexual abuse in order to impeach the victim's testimony that he did not tell anyone about Sussman's conduct because he thought it was right. Although the court was not persuaded that the purported sexual touching by the victim's father in the shower when the victim was a young child was sufficiently similar or close enough in time to the acts alleged to have been committed by Sussman, it allowed the defense some latitude and agreed that Hurley could ask the victim's mother about her son's prior accusation against his father. Dkt. 7, Part 6 (Tab 240), at 1050-51. The court ruled, however, that the defense could not introduce Mitchell to testify about the victims's statements to her about his father because her testimony would only be cumulative to what the defense could introduce through other witnesses. *Id*. at 1054-55.

Hurley did not ask the victim's mother about her son's allegations against his father. He did, however, ask her what caused her son to make the allegations against Sussman. The victim's mother testified that she confronted her son after some friends of hers who had been sexually abused told her that her son was acting like someone who had been sexually abused. *Id*. at 1097. Hurley's questioning continued as follows:

> Q. And so what did you do?
>
> A. I asked Scott if that had ever happened to him.
>
> Q. And what were your exact words?
>
> A. Basically, I told him my friends had been telling me that you act like you have been molested or whatever. He–is that true–and he said yes. And I go, by whom. And he said Gordy.
>
> Q. Those were your exact words?
>
> A. I believe so.
>
> Q. And he didn't have any trouble understanding the word "molested"?
>
> A. No.

*Id.* at 1097.

In response to follow-up questioning, the victim's mother explained that her son's symptoms that were purportedly consistent with sexual abuse were his explosive outbursts and his bed-wetting. She admitted, however, that those symptoms existed before her son had ever met Sussman.

The defense called several witnesses who offered their opinion that the victim was untruthful. The victim's cousin, Kim Varian, testified that the victim had lived with her and

that she was of the opinion that he was not a truthful person.  Dkt. 7, Part 9 (Tab 243), at 1835-36.  Varian also testified that during the time the victim lived with her he had sufficient knowledge of sexual matters to know that masturbation with an adult was inappropriate.  *Id.* at 1817.  The victim's uncle, Dr. Kenneth Bretts, testified that the victim had lived with him less an a week.  Dr. Bretts testified that in his opinion the victim was a schemer, who would do anything to return to living with his mother.  *Id.* at 1845-46.

Suzette St. Cyr, a friend of the victim's mother who had lived with the victim, testified that the victim had told her he had made up the allegations against Sussman.  *Id.* at 1860-61.  Barbara O'Connor, another friend of the victim's mother, testified that the victim's mother had told her she might obtain money from a legal action against Sussman.  She also testified that the victim lied for no reason at all. *Id.* at 1892-93.

Darren Bush worked at the canoe and kayak store owned by Sussman where he and the victim often met.  Bush testified that he had formed an opinion about the victim's truthfulness, and in his opinion, the victim "doesn't know what truth is."  *Id.* at 1953.  Diane Boles, who had taught the victim, testified that the victim was not always truthful.  *Id.* at 1913.

At the close of trial, the court took judicial notice of the State of Indiana's mandatory reporting law which requires any counselor, such as Bryce Mitchell, to report child abuse revealed by his or her clients. Dkt. 7, Part 11 (Tab 245), at 55.  In his closing argument, Hurley used this evidence as a basis to argue that the victim never complained of sexual abuse by Sussman to any of his teachers or counselors before his mother confronted him about it in July 2002.  He went on to argue that, when asked directly by Mitchell, petitioner specifically denied being sexually abused by Sussman.  The prosecutor objected; the trial court sustained the

7

objection.  *Id*. at 119.  Nonetheless, Hurley went on to argue, without any further objection by the state, as follows:

> She [Mitchell] said to him is Gordon Sussman molesting you, and he said no.  No.  During the times he was institutionalized in Indiana, he was provided counseling, and the court read to you a statute of which judicial notice was taken that relates that instances of child abuse reported to such counselors must be reported by them, and you heard no evidence that any such report was ever made.  Had he told his counselors that Gordon Sussman had molested him, it would have been reported.  But he didn't.  He didn't do this until he was back living with his mother.

*Id*. at 118-19.

The jury found Sussman guilty of two counts of repeated sexual assault of the same child and 16 counts of possession of child pornography and not guilty of two counts of exhibiting harmful material to a child.

## II.  Post-conviction Proceedings

Sussman filed a postconviction motion in the trial court challenging Hurley's effectiveness with regard to his conviction on the sexual assault counts.  Sussman alleged that Hurley was ineffective for:  1) failing to make proper use of available evidence to alert the jury that, after discussing the subject with his therapist in November 1999, the complaining witness specifically denied to her that he was having sexual contact with Sussman; 2) failing to file a pretrial motion under Wis. Stat. § 971.31(11), resulting in Sussman's inability to inform the jury that the complaining witness had made a sexual assault accusation against his father that authorities had determined to be false and that the victim had recanted on three different occasions; and 3) failing to request a jury instruction cautioning the jury regarding the proper

use of evidence regarding out-of-jurisdiction conduct.   (Sussman later abandoned this third claim.)  The trial court held an evidentiary hearing on November 30, 2006, at which Hurley testified. Dkt. 7, Part 13 (Tab 248).

Hurley testified that before trial, he had obtained treatment notes from Bryce Mitchell, the victim's therapist.  In a note dated November 11, 1999, Mitchell wrote that the victim had firmly denied any inappropriate contact with the defendant.  Hurley testified that it was his trial strategy to present this denial to the jury.  He testified that he intended to call the therapist as a witness to impeach the victim, who had testified he could not recall making the denial.  Hurley testified that he did not do so because he believed that the judge had ruled he could not question Mitchell about the note.  *Id.* at 9-18.

Hurley testified that it was also his trial strategy to show that the victim's prior accusation of sexual misconduct by his father was false.  Hurley testified that he was not able to place this evidence before the jury because he had not filed a motion prior to trial.  Hurley testified that he forgot to bring the motion.  *Id*. at 25-32.

In a 10-page order filed March 8, 2007 (dkt. 1, Petition, Appendix A), the court addressed Sussman's claim that Hurley's performance had been ineffective because he failed to introduce Mitchell's November 11, 1999 note.  Hurley had not introduced the note because of his misunderstanding of an evidentiary ruling by the court.  The court assumed that this was deficient performance but then found no prejudice:

> Defendant's trial counsel thoroughly examined the complaining witness' credibility, adducing evidence from the complaining witness himself and a number of other persons that the complaining witness had in the past lied in general and lied specifically about sexual contact between himself and defendant.

9

> The Court cannot but conclude that the failure to produce a relatively minor confirmatory note does not produce a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Id*. at p. 5.

The court next addressed Sussman's claim that Hurley had provided ineffective assistance when he failed to file a pre-trial motion under Wis. Stat. § 971.31(11).  Because Hurley did not file this motion, he was not allowed to present evidence of past false reports of sexual abuse pursuant to Wis. Stat. § 972.11(2)(b)3.  The court stated that Hurley's failure to file a motion under Wis. Stat. § 971.31(11) could constitute ineffective assistance if the motion itself would have had merit.  The court then found, according to *State v. DeSantis*, 155 Wis. 2d 774, 785, 456 N.W. 2d 600, 605 (1990), that three determinations must be made before evidence is admitted under § 972.11(2)(b)(3).  First, the evidence must be of prior untruthful allegations of sexual assault made by the complaining witness.  Second, the evidence must be material to a fact at issue in the case.  Third, the evidence must be of sufficient probative value to outweigh its inflammatory and prejudicial nature.

The court determined that the complaining witness's allegation that his father made contact with his intimate parts was not an alleged sexual assault because no evidence was submitted that the complaining witness claimed that his father had touched him for the purpose of sexual gratification or sexual degradation.  Also the court found that the probative value of the purported evidence was "significantly, indeed grossly, outweighed by its prejudicial effect."  The court stated:

> The alleged false accusation by the complaining witness against his father was of a rather ambiguous nature, was temporally remote

10

> from the allegations against the defendant, especially considering the youth of the complaining witness and contained vastly different surrounding circumstances.  Thus, the probative value of the evidence would have been quite low.   The potential for improper use and confusion by the jury, however would have been unacceptably high.   Extensive testimony regarding this alleged report of sexual abuse would likely have focused undue attention on the complaining witness's behavior in a situation quite unlike the one actually being tried.

Dkt. 1, Exh. A at 8.

The court held that Hurley's failure to put in evidence that the victim previously had accused his father falsely of sexual assault was not prejudicial:

> Significant evidence was actually presented regarding the complaining witness' propensity to lie.   A temporally remote addition to this evidence would not create a reasonable probability of a different outcome.

*Id.*

## III. Appellate Proceedings

Sussman appealed his conviction and the order denying postconviction relief.   He reasserted his claim that Hurley had been ineffective by failing to introduce certain evidence to impeach the victim's testimony concerning the sexual assault charges.   In addition, he argued that the trial court had committed reversible error when it had allowed the victim to testify that his "mother had heard from friends and therapist that [he] was showing signs of being sexually abused."   Appellant's Brief, dkt. 5, exh. D.   With respect to this second claim, Sussman argued that admission of the testimony was erroneous for two reasons:  1) lay opinions comparing the behavior of complainants in sexual abuse cases to behaviors of sexual abuse victims were inadmissible under *State v. Jensen*, 147 Wis. 2d 240, 432 N.W. 2d 913 (1988); and 2) the

11

inadmissible information was provided to the jury through double hearsay.  Acknowledging that Hurley had objected at trial only on hearsay grounds and thereby failed to preserve the improper-lay-opinion objection, Sussman argued that the court should excuse the default under the "plain error" doctrine.  *Id*. at 38-44.

On July 24, 2008, the court denied relief and affirmed Sussman's conviction in a terse, nine-paragraph per curiam decision, relying in large measure on the circuit court's "well-explained and thorough decision denying the post conviction motion."  Dkt. 5, Exh. B at ¶6. In addressing Sussman's claims of ineffective assistance of counsel, the court of appeals asserted reliance on *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 851 (1990).  Dkt. 5, Exh. B, ¶2.  In *Johnson*, the state court used the two part test in *Strickland v. Washington,* 466 U.S. 668, 690 (1984):  to show that counsel was ineffective a defendant has to show that his counsel's performance was deficient and that there is a reasonable probability that, but for the lawyer's deficient performance, the result of the proceeding would have been different.  The court of appeals concluded that even if it presumed that Hurley's performance had been deficient because he failed to impeach the victim with the contradictory therapist's note and failed to introduce evidence that the victim previously had falsely accused his father of sexual assault, Sussman had failed to prove prejudice: "We cannot conclude that the result of the proceeding would have been different had the note been introduced."  *Id*. ¶4.[1]  Further, the court found that Hurley's failure to file a pretrial motion concerning the false accusation did not prejudice Sussman.  *Id*. at ¶6.

---

[1]  Note that this gloss of the test ("the result of the proceeding would have been different") imposes a higher burden that the actual test of *Strickland* and *Johnson* (a "reasonable probability" that the result of the proceeding would have been different)  More on this in the analysis.

The court of appeals rejected Sussman's hearsay objection to the admission of the victim's testimony that his mother became suspicious because her friends and a therapist thought the victim showed signs of sexual abuse.  The court of appeals agreed with the trial court that this was not offered to prove the truth of the matter asserted but was offered only to show why the mother confronted the victim causing him to disclose the assaults.  *Id*. at ¶¶ 7-8.

The court of appeals rejected Sussman's separate challenge, raised for the first time on appeal, that this same testimony was improper lay opinion testimony.  The court found that even assuming the testimony was improperly allowed, its admission did not deny Sussman a fundamental constitutional right or substantially impair his right to a fair trial.  In the court's view, "[w]hen considered in light of all the evidence admitted at this lengthy trial, the evidence was simply not that significant."  *Id*. at ¶9.

## IV.  Petition for Review

Sussman filed a petition for review of the court of appeals' decision to the Wisconsin Supreme Court.  Dkt. 5, Exh. G.  In the petition, Sussman modified his point heading with respect to his challenge to the admission of the lay opinion hearsay, asserting not merely that the admission of the testimony constituted reversible error, but rather that its admission violated his federal and state constitutional rights of due process and to confront the witnesses against him.  *Id.*, p. 17.  On November 17, 2008, the Wisconsin Supreme Court denied Sussman's petition for review.  Dkt. 5, Exh. C.

13

ANALYSIS

## I.  Procedural Default

Sussman contends that the state violated his due process and confrontation clause rights at trial when the court allowed the victim to explain that unnamed lay witnesses had opined to his mother that the victim was behaving like a sexual abuse victim.  The state responds that Sussman procedurally defaulted his constitutional challenges to the admission of this evidence by failing to present them adequately to the state court of appeals.

In order to satisfy the exhaustion requirement, a petitioner must "fairly present" his claims to the state courts.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam); *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001)*; see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.").  That is, "[a] petitioner must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court."  *Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996) (quotation omitted).   In order to meet the "fair presentment" precondition to exhaustion, "[t]he petitioner must have placed both the operative facts and the controlling legal principles before the state courts."  *Chambers,* 264 F.3d at 737-38 (internal citations omitted).   "A mere passing reference to a constitutional issue certainly does not suffice."  *Id*. at 738.  A petitioner's failure to fairly present his federal claims to the state courts is a procedural default that bars this court from considering the merits of the claims.  *Id*.

14

Courts should consider four factors in deciding whether a petitioner has fairly apprised the state courts of the constitutional nature of his claim:  1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006) (citations omitted).  However, mere similarity of state and federal claims is not enough to exhaust.  *Duncan*, 513 U.S. at 366. As the Supreme Court has explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Id.*, 513 U.S. at 366. *See also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").

At trial, Sussman objected to the admission of the statements by the friends of the victim's mother solely on hearsay grounds.  On appeal, he added a claim that the testimony was improper lay opinion testimony.  Because he had not made this claim at trial, Sussman was forced to argue that the admission of this testimony was "plain error."  Wisconsin defines a "plain error" as one that resulted in the denial of a "basic constitutional right or a substantial impairment of the right of fair trial." *State v. Sonnenberg*, 117 Wis. 2d 159, 178, 344 N.W. 2d 95 (1984).  In his appellate brief, Sussman asserted that the error in his case violated his "state

and federal constitutional rights to due process (inadmissible lay opinions to bolster complaint's credibility) and to confront the witnesses against him (hearsay)." Appellant's Br., dkt. 5, exh. D, at 37; *see also id*. at 47 ("Because the errors in this case violated Mr. Sussman's federal and state constitutional rights to due process and to confront the witnesses against him", burden was on state to prove error did not contribute to verdict). However, he made these arguments solely in the context of arguing that the erroneous admission of the non-expert, hearsay testimony was plain and not harmless. The point heading of the argument section did not include a reference to any specific constitutional amendments but asserted merely that "reversible error" had occurred as a result of the admission of the third-hand opinion testimony. Sussman relied primarily on Wisconsin decisions. He did not cite any federal constitutional amendments, federal cases interpreting federal constitutional law or state cases employing a constitutional analysis. The only federal case he cited was *United States v. Olano*, 507 U.S. 725 (1993), a case not decided on constitutional grounds. Under these circumstances, I am not convinced that petitioner sufficiently alerted the state appellate court that he was raising a federal constitutional claim as opposed to a routine, state law evidentiary claim. Accordingly, because Sussman has not attempted to meet either the cause-and-prejudice or miscarriage-of-justice exceptions to the procedural default rule, he has procedurally defaulted this claim.

But even if this court were to find that Sussman had fairly presented his due process and confrontation challenges to the state appellate court, the outcome would not change. As the state courts recognized, the out-of-court declarations introduced through the victim were *not* hearsay because they were not offered to prove the truth of the statements, *i.e.*, that the victim behaved in a manner similar to that of sexual abuse victims, but rather to explain why the victim

disclosed the assault when he did.  Wis. Stat. 908.01(3) (defining hearsay as statement . . . offered in evidence to prove the truth of the matter asserted").  "In such cases the Sixth Amendment is satisfied by allowing cross-examination of the witness offering the statements," *Martinez v. McCaughtry*, 951 F.2d 130, 134 (7th Cir. 1991), which in this case, was the victim. Sussman's right of confrontation was implicated only if there were "complicating circumstances" at trial that presented the danger that the out-of-court statements could have been misused by the jury.  *Id.* at 134; *Tennessee v. Street*, 471 U.S. 409, 414 (1985).  Examples of such complicating circumstances are where the prosecutor exploited the non-hearsay statements and used them for their truth, or where the limiting instruction to the jury was inadequate. *Id*.  Such complicating circumstances do not exist here.  Although the trial court did not provide the jury with a limiting instruction, Sussman did not ask for one.  Nonetheless, the jury heard the prosecutor explain that he was offering the matter not for the truth but to explain why the victim disclosed when he did.  After hearing this explanation, the prosecutor did not make any further use of the evidence or refer to it during his closing argument.

Further, Sussman had the opportunity to cross-examine at least one of the declarants, the victim's mother, at trial.  Hurley took advantage of this opportunity to ask her about the circumstances that prompted her to confront her son and the statements made by her friends. Hurley undermined the reliability of these third-hand statements by showing that long before the victim ever had met Sussman the victim had exhibited the behavior supposedly consistent with having been sexually abused.  By doing so, Hurley sufficiently neutralized any marginal prejudice that might have occurred if jurors failed to limit their consideration to the purpose for which the statements had been admitted.

17

Finally, I agree with the state appellate court's determination that these out-of-court statements were "not that significant" in light of all the other evidence that was presented at trial. Under these circumstances, I cannot find that Sussman's Sixth Amendment right to confront adverse witnesses was violated or that he was denied his right to a fair trial as a result of the admission of the evidence.

## II. Merits

### A. Legal Standard

Federal courts may grant a state prisoner habeas relief only if the state courts' adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To grant habeas relief under the "contrary to" clause, a federal court must find that the state court reached a result opposite to that reached by the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Jackson v. Miller*, 260 F.3d 769, 774 (7th Cir. 2001). To obtain relief under the "unreasonable application" clause, a habeas petitioner must show that the state court's decision unreasonably extended a clearly established Supreme Court precedent to a context where it should not have applied or unreasonably refused to extend such precedent to a context where it should have applied. *Jackson*, 260 F.3d at 774. A state court's factual findings are presumed correct unless the

18

petitioner presents clear and convincing evidence showing that the findings were wrong.  28 U.S.C. § 2254(e)(1).  To prevail on this prong, a petitioner must show that the state court's decision was so erroneous as to be objectively unreasonable, that is, well outside the boundaries of permissible differences of opinion.  *Emerson v. Shaw*, 575 F.3d 680, 684 (7th Cir. 2009).

### B.  Ineffective Assistance of Counsel

Sussman asserts that Hurley was ineffective in two ways.  First, Sussman claims that Hurley did not impeach the victim with a note written by the victim's therapist stating that the victim had firmly denied any inappropriate contact with Sussman.  Second, Sussman contends that Hurley failed to file a pre-trial motion under Wis. Stat. § 971.31(11), seeking leave to introduce testimony that the victim had falsely accused his father of sexual abuse in the past.  As noted in the fact section, the state courts considered these claims and rejected them.

In *Strickland v. Washington,* 466 U.S. 668, the Supreme Court established a two-part test for determining whether a criminal defendant is entitled to a new trial because of his lawyer's mistakes.  First, the defendant must show that his trial counsel's performance fell below an objective standard of reasonableness.  Second, he must show that he was prejudiced by counsel's errors.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

19

On habeas review, the bar is even higher:  the petitioner do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance; he must show that the state courts applied *Strickland* to the facts of his case in an objectively unreasonable manner.  *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  Showing that a state court applied *Strickland* unreasonably is extraordinarily difficult because *Strickland* calls for inquiry into degrees.  This means that only a clear error in applying *Strickland*'s standard will support a writ of habeas corpus.  *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997); *see also Knowles v. Mirzayance*, ___ U.S. ___, 129 S.Ct. 1411, 1420 (2009)("the question is not whether a federal court believes that the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable–a substantially higher threshold").

Sussman contends that the court of appeals applied the wrong legal standard when it determined that Hurley's failure to introduce the therapist's note did not prejudice Sussman. There is no dispute that the trial court employed the correct standard when it denied Sussman's post-conviction motion, finding that there was no reasonable probability that but for Hurley's alleged ineffectiveness, the result of the trial would have been different.  The court of appeals, however, incorrectly set forth the standard at ¶4 of its opinion, stating "we cannot conclude that the result of the proceeding *would have been different* had the note been introduced." (Emphasis added).   This iteration of *Strickland*'s prejudice test placed too high a burden on Sussman.  But at ¶2 of its opinion, just a page earlier, the court of appeals outlined the two-part test for determining ineffective assistance and cited to *State v. Johnson*, 153 Wis. 2d at 127, 449 N.W. 2d at 851, in which the court correctly quoted *Strickland's* test for determining prejudice.  Then the court led off its analysis by proclaiming that "even assuming deficient performance, Sussman

cannot show prejudice." Dkt. 5, Exh. B at ¶4. This is an unequivocal finding that there was no prejudice *at all*. To back this up, the court of appeals jumped to the prejudice prong of the *Strickland* test to weigh Sussman's challenges against Hurley's handling of the therapist's note.

First, the court noted that Hurley had brought the contents of the therapist's note to the jury's attention when he asked the victim whether he had denied sexual contact with the defendant to his therapist. The victim testified that he could not remember but that if he had his denial would have been a lie. The court noted that Hurley brought this to the jury's attention again during closing argument. The court concluded that the note itself would have added little to the information received by the jury though the victims's credibility because other substantial evidence was introduced at trial in an attempt to impeach the victim's credibility. By way of example, the court cited the testimony of a friend of the victim's mother (Suzette St. Cyr) that the victim told her he had lied about the sexual contact with Sussman.

Given the unmistakable tenor of the court's brief analysis, its praise for the circuit court's analysis and conclusions and its overarching statement that Sussman could not show prejudice, the most logical exegesis is that the court actually concluded that the result of Sussman's trial would not have been different had the therapist's note been introduced. This isn't the *Strickland* formulation either: it's more favorable to Sussman, but according to the court of appeals, he *still* doesn't win. The point is that in these particular circumstances, it does not advance the §2254(d) analysis to focus tightly on the court's word choice. The court did not misapply *Strickland*'s prejudice standard to Sussman's detriment. Having read the entire transcript of the trial, I agree that even if the therapist's note had been admitted at trial there was no reasonable

probability that the result of the proceeding would have been different.  This claim is not a basis to grant habeas relief to Sussman.

Next, the court of appeals addressed Hurley's failure to file a pretrial motion seeking leave to introduce testimony that the victim had falsely accused his father of sexual abuse.  The court began its analysis with another unalloyed pronouncement: "We again conclude that Sussman cannot show prejudice."  Dkt. 5, Exh. B at ¶6.  The court cited to the trial court's decision denying Sussman's post-conviction motion.  The trial court had noted that state law required Hurley to file a motion to present evidence of the victim's prior untruthful allegations of sexual assault, then applied the three-part test in *Desantis* to determine whether such a  motion would have been granted if Hurley had brought one in Sussman's case.  The court found that the victim's allegation that his father had made contact with his intimate parts was not an allegation of sexual assault.  The trial court also found that the probative value of the evidence was significantly outweighed by its prejudicial effect because it was old, ambiguous and unlike the incidents actually being tried.  The trial court concluded that it would have denied this motion if Hurley had filed it; therefore Sussman had not been prejudiced by Hurley's failure.

Sussman argues that this was not a reasonable application of the law, citing to *Redmond v. Kingston*, 240 F. 3d 590 (7th Cir. 2001).  In *Redmond*, the court held that the Wisconsin trial courts had unreasonably limited the defendant's right to cross-examine his accuser when they forbade impeachment of the accuser with evidence that within the past year she had falsely reported a sexual assault.  The court stated:

> The fact that a teenage girl has a disordered past and lies a lot (who doesn't) does not predict that she will make up stories about having sex.  To indulge such an assumption would be to place such

22

person largely beyond the protection of the law.  But the fact that
the girl had led her mother, a nurse, and the police on a wild goose
chase for a rapist merely to get her mother's attention supplied a
powerful reason for disbelieving her testimony eleven months later
about having sex with another man, by showing that she had a
motion for what would otherwise be an unusual fabrication
(citations omitted).

*Id*. at 591-92.

Sussman argues that this reasoning supports his argument that Hurley was ineffective for failing to present evidence of the victim's prior false allegation of sexual assault.  But any surface similarities between the two situations are greatly outweighed by profound factual differences.  In Sussman's case, the teenaged victim's allegedly false accusation was that his father had touched his intimate parts in the shower about a decade earlier, when the victim was five years old, and the trial court determined that this incident was not a sexual assault and the accusation was not false.  In *Redmond*, the victim had fabricated and actively promoted a vividly detailed and admittedly false allegation of a brutal sexual assault less than a year before her accusations against the defendant.  Further, as noted above, Sussman introduced a great deal of evidence that called into doubt his accuser's credibility, including the witness's own admission that he had accused his father of sexually assaulting him and falsely accused Sussman of molesting other children.  Whereas the impeachment value to Redmond of the false allegation evidence was extraordinary, the impeachment value to Sussman of his accuser's earlier story was nonexistent.

Therefore, the court of appeals reasonably applied *Strickland* when it agreed with the trial court that the failure to admit the evidence of the victim's prior false accusation of sexual assault would not have created a reasonable probability of a different outcome.

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that the petition of Gordon E. Sussman for a writ of habeas corpus be DENIED.

Entered this 16th day of September, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of                                                                                                    Telephone
STEPHEN L. CROCKER                                                                                (608) 264-5153
U.S. Magistrate Judge

September, 2009

James Geis
James Geis Law Office
5631 South Blackstone Avenue
Chicago, IL 60637

Daniel J. O'Brien
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707-7857

Re:___Sussman v. Dippisch
Case No. 09-cv-35-bbc

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before October 1, 2009, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by October 1, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,

/s/

Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:     Honorable Barbara B. Crabb, District Judge

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the  full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation.  Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.  *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).**